Judge Owsley
delivered the opinion.
In 1781, Bartlet Searcy executed to Joshua Hill the following obligation, viz:
“Know all men by these presents, that I, Bartlet Searcy, of Fayette county and state of Virginia, have bargained and sold unto Joshua Hill, of the said county and state, tvyo hundred acres of land, lying in said county and on Howard’s creek, the said Hill is to have his choice out of nine hundred acres of land, if on the said two hundred acres of land there shall be water; and if the said Hill shall not like that, he is to have two hundred acres of land out of a tract claimed by said Searcy, known by the name of the Rock house, in said county; wherefore I, the said Bart-let Searcy, do oblige myself, my heirs, executors, administrators and assigns, unto said Joshua Hill, his heirs, executors, administrators and assigns, in the penal sum of ten thousand pounds, currency of Virginia, for which land I, the said Searcy, have this day received full satisfaction; as witness my hand and seal this 6th day of April, 1781.
“The condition of the above obligation is such, that if the above bound, Bartlet Searcy, shall make or cause to be made a good and lawful title to the above mentioned two hundred acres of land, unto the said Joshua Hill, so soon as the said Searcy shall obtain his own title from this state, then this obligation to be void, else to remain in full force and virtue, the day and date above mentioned. Signed, sealed and delivered before us.
“BARTLET SEARCY, (Seal.)”
The tract of land called the Rock house, was, after-wards, jn 1785, patented to the said Bartlet Searcy, and be, subsequently, in 1790, departed this life, after having made and published his last will and testament. The will was duly admitted to record, and the widow of the testator being named an executrix, took upon herself the execu. lion of the will, and afterwards intermarried witlTa certain *540 Joseph Reardeo. — Joseph Rearden caused a settlement to be made of the accounts of 'be executrix, and, for some cause, charged tbe estate with about l 7j, and procured its allowance in the settlement of the accounts. This sum was afterwards transferred by Joseph Rearden to bis brother Dennis Kearden, (the present appellant) and he brought suit therefor against the executrix and the heirs of Bartlet Searcy, dec. and finally recovered a judgment at law A fieri facias was sued out on this judgment, and about one hundred and forty-nine acres, part of tbe Rock bouse tract, was sold by the sheriff; and a deed of conveyance made by tbe sheriff to the appellant, who was the purchaser of the sheriff.
Under the purchase thus made by the appellant, he took possession of tbe land; and the heirs of Bartlet Searcy, dec. supposing the sale to have been illegal, brought an e-jectment against him; but it was finally decided by this court, that the title passed to the appellant under the sale and conveyance made bv tbe sheriff.
The heirs of Bartlet Searcy, dec. then exhibited their bill in equity, and asking, for causes alleged in the bill, a decree against the appellant to compel him to surrender unto them the title which he held under the sale and conveyance of the sheriff The court below made a decree dismissing the bill of the heirs; but on an appeal to this court, that decree was reversed, aud tbe cause remanded, with directions for a decree tb.be pronounced against the present appellant, compelling him to convey tbe title to the heirs, fyc. See 1 Marshall, 1.
After the opiuion was rendered by this court, but before any conveyance was made hy the present appellant, he exhibited his bill in the circuit court, to which the original cause of tbe heirs against him was remanded.
He charges in his bill, that the bond which was given by Bartlet Searcy in bis life time to Joshua Hill, (and which we have already recited.) has never been satisfied; that it was, in 1784, for a valuable consideration, assigned by Hill to Michael Sheerly, who shortly thereafter departed this life,) aviag Charles Sheerly his legal representative and beir at law; that Bartlet Searcy held no such land or Howard’s creek, as that described in the bond given by bim to Hill, and that at the -time of Michael Sheerly’» death, his son and heir, Charles Sheerly, was an infant oí tender years; aud that within a short time after he arrived *541 at full age, the said Charles applied to the executrix of the estate of the said Bartlet Searcy, (whose heirs were also infants) and made known his election to take the land now in contest, being part of the Rock house track, and demanded a title; that said Charles never obtained a title; and that whilst the suit in chancery, brought by the heirs of Bartlet Searcy, dec, against the appellant, was depending in this court, the appellant and, u certain John H. Slaughter, for a valuable consideration, bought the obligation from Charle- Sheerly and obtained his assignment thereon; that since, the appellant has purchased from Slaughter his interest in the bond and received his assignment thervon. The bond and assignments, thus alleged to have been made, the appellant insists clothes him with a perfect equity to retain the title; and he charges that, with a knowledge of this equity, a certain Achilles Sneed has purchased and obtained a conveyance from the heirs, and after making 'he sain’ Sneed, the heirs of Bartlet Sear-cy, his widow, &c. defendants, be prays for a decree to compel them to relinquish their title, and for general relief. &c.
Sneed answers the bill, putting the appellant upon the proof of the allegations of his bill; insisting on the staleness of the bond through which the equity of the appellant is asserted, as a bar to the relief; and denying that he had any information of the appellant’s equity, other than vague rumorsr in which he placed no confidence, before he purchased and obtained a conveyance from the heirs, &e. The answer of Sneed also charges, that he purchased and obtained a conveyance from one of the children of Bartlett Searcy, deceased, to whom the land was willed ; and contends that the title did not pass to the appellant under the sale and conveyance of the sheriff', made in virtue of a writ offieri facias against the heirs of Bartlett Searcy, in consequence of the heirs having taken nothing by descent from their ancestor, ⅝¾.
The other answers contain nothing of importance ether, than what is contained in the answer of Sneed — they put . the appellant on the proof of his equity.
On a final hearing the circuit court pronounced a decree dismissing the appellant’s bill; from which he appealed to this court.
We apprehend the legal title must be admitted to have passed to the appellant by the sale and conveyance of the *542 sheriff. It was so decided on the trial, at law, between the heirs of Bartlett Searcy and the appellant, and as that trial was had before Sneed purchased, the decision then given is not only evidence against the heirs but against Sneed claiming under them. Bui unaided by that decision, we should have no hesitation in maintaining that the tille passed, notwithstanding the devise contained in the will of Bartlett Searcy. In consequence of the will, the heirs, it is true, took nothing by descent from their ancestor ; but the person to whom the devise was made was one of the heirs, and although he did not hold the title 33 heir, he held it as devisee, and the legal effect of a sale and conveyance made by the sheriff under a general judgment, is precisely the same, whether the defendant holds the title as heir or devisee. The sale was made by the sheriff under the act of 1732, and according to that act lands were subject to be sold under writs oí fieri jadas, in satisfaction of ail judgments. It is not, therefore, the character in which^the defendants, or any of them, held the title, but the judgment that is to be looked to in ascertaining the liability of their lands ; and as the judgment was general against them, the lands of each and all were subject to its satisfaction.
Lands ape sufcj’ct to ex ecution for the debts of a decedent, in the hands of a devisee as well as in the hands of the heir.
Only an innocent purchaser, obtaining the title without noth't, will be protected in equity.
If then we are correct in supposing the title passed under the sheriff’s sale and conveyance, it follows that Sneed cannot avail himself of his alledged purchase without notice. For it is only where an innocent purchaser obtains the title, before notice, that his purchase will be protected in equity, and as the title vt/as in the appellant at the exhibition ofhis bill, and from any thing apparent in this case, at this time also, whatever might otherwise have been the condition of Sneed’s purchase, he cannot, in this contest, stand in the attitude of an innocent purchaser without notice of the appellant’s equity.
But it is contended that the appellant has shewn no equity. It is alledged that the bond of Bartlett Searcy, dec’d. conferred on Hill merely a right to elect to take the two hundred acres out of the Rock bouse tract; a tract containing several hundred acres, all of which had been conveyed toother persons, by Bartlett Searcy, in his lifetime, except the 149 acres now in contest; and ¡1 is urged that having failed to make an election before the conveyance was so made by the decedent, the appellant should pot *543 now be permitted to urge his claim, to the prejudice of the devisee, under the will of the decedant.
A volunteer can’t occupy more favorable grounds than his principal.
On abillbro’f to quiet possession, by & compl’t holding the title, lapse of time forms no ba-to the relief sough t.
The force of the argument is not, however, perceived by the court. The circumstance of no election being made until after Bartlett conveyed to others, could not, upon any principle of equity, have prevented Hill from asserting claim to the residue of the tract not conveyed, if Bartlett were still living, and the devisee of Bartlett cannot occupy more favorable ground than his testator. The devisee is a mere volunteer, and a volunteer has been always held to hold the estáte subject to all the equity which it was liable in the hands of the person from whom be received it.
There cannot be a doubt but that the bond conferred on Hill a right to select the land in contest, and on making such a selection, uoless for some supervenient cause the remedy is defeated, a court of equity ought to enforce a cenveyance. For the right to make siich a selection is expressly given to Hill by the bond, and the obligation on its face purports to have been given for a valuable consideration received by the dec’d. Bartlett. Hill appears, however, to have made no such a selection, but the obligation has been regularly transferred down to the present appellant, and he not only now asserts claim to the land in contest, but it is proven that Charles Sherly, the heir of Michael Sherly, to whom Hill assigned the obligation,actually elected to take the land in contest, and demanded a conveyance of the title. The election and demand of Charles Sherly thus made, we suppose, must be considered as attaching a specific equity to the specific tract now in contest. For although Hill made no election, his assignment conferred an interest and an authority to1 do so to Michael Snirlj, and upon the death of Michael, tuat interest and authority descended upon his son and heir, Charles Shirly,
But it is contended that the lapse of time since the execution of the obligation, by Bartlett Searcy to Hill, forms an insuperable objection to the decree sought by the appellant.
Here it should not, however, be forgotten, that the object of the appellant’s bill is not to obtain the specific exe~. cutionof a contract from persons holding the legal title. The appellant was himself clothed with the title, and had actually enjoyed the possession of the land for many j’ears, *544 and his application was made to quiet that title and possession. In deciding on the effect of the lapse of time, in the present case, therefore, we should not be governed by those considerations which might beentiiled to great consideration in a case brought to reverse the specific execution of a contract by compelling the possessor and person having title to convey after such a lapse of time. It is barely necessary to enquire whether there exists such circumstances in the present case, notwithstanding the lapse of time, as are satisfactory to shew that the obligation has never been satisfied, and that the appellant is entitled to the beneficial interest therein.
The payment of interest, a demand, or the obligee being an alien enemy, repel the presumption of pay ment of a bond of more than 20 years standing.
And that the bond has, in fact, never been satisfied, we can entertain no reasonable doubt. The only evidence of satisfaction, on which there can be any plausible reliance, consists exclusively in the lapse of time since the execution of the obligation ; and that circumstance, it is conceded, would, in itself, be sufficient to raise a presumption of satisfaction, were there nothing else in the cause calculated to repel such a presumption. But (he presumption which arises from lapse of time is barely a presumption of fact, and may be repelled by proof of other incompatible facts. Thus the payment of interest, by the obligor, within twenty years prior to the commencement of an action, on a bond of upwards of twenty years standing, has been held sufficient to repel the presumption of payment, which would otherwise have been inferred from the lapse of time. So it has been held sufficient to obviate the presumption from lapse of time, to shew a demand of the money: And the circumstance of the plaintiff being an alien enemy, during part of the time, has also been held sufficient to repel a presumption of payment after the lapse of twenty years.— Esp. Nis. Pri. 1 vol Am. ed. 63, 64.
in the present ease there was not only an application, by Charles Sherly, for a title, within twenty years before the commencement of this suit, but he is proven to have been an infant at the death of his father, in 1784, and did not arrive at fail age until about 1793 or-1794. And not only so, but the title seems to have been acquired by the present appellant, by his purchase from the sheriff, within less than twenty years from the date of the obligation, and there seems to have been no other land out of which the obligation could have been discharged, and the personal estate was insufficient to discharge it. 't hese circutn- *545 stances are abundantly sufficient to shew the obligation still remains unsatisfied ; and being unsatisfied, and having come by legal contract into the haods of the appellant, whilst he held the legal title, wd apprehend, it conferred Upon him a good cause to resort to a court of chancery to protect that title and compel those asserting claim to surrender it.
Upon the vvhole, we are of opinion that relief should have been decreed the appellant, and consequently the decree of the court below must be reversed vith cost, the cause remanded to that court and such orders and decrees there made as may not be inconsistent with this opinion.